**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **v.** | ) | **No.: 1:25-CR-00062-JRH** |
| **DENNIS NOSTRANT,** **Defendant.** | ) | |

**DEFENDANT'S FIRST PARTICULARIZED OMNIBUS MOTION TO SUPPRESS SEARCH WARRANT AND OTHER EVIDENCE**

COMES NOW the Defendant, Dennis Nostrant (hereinafter "Mr. Nostrant"), by and through undersigned counsel, and pursuant to Fed. R. Crim. P. 7, 12(b)(3)(c) and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and hereby moves this Court for an evidentiary hearing, and an order suppressing all evidence of any kind – any physical evidence, bank records, computer and electronic storage devices and files, forensic electronic evidence, email records, statements, and testimony allegedly seized by law enforcement officers in several separate subpoenas and a search warrant from on or about July 12, 2022 through and including August 5, 2025 as addressed below.

As grounds therefore, Nostrant alleges that the search of the premises located at 2540 Airport Rd. and 2658 Airport Road, Hinesville, GA, bank records, email records and other accounts belonging to him or where he was a signatory and

the seizure of items from them were improper, illegal, and without probable cause, in violation of Movant's rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in the following particulars:

## I. Facts

1. Sometime in late 2021, the Veterans Administration Office of Inspector General (VA-OIG) and Federal Bureau of Investigation (FBI) began an investigation into the House Of Prayer Christian Churches of America, Inc. (HOPCC) and the House Of Prayer Bible Seminary (HOPBS) in Hinesville, Georgia and other locations.
2. The Bible Seminary portion of the premises operated out of the 2658 Airport Rd. building.
3. Mr. Nostrant was a volunteer bookkeeper for the HOPCC who lived with his disabled wife on the church premises in Hinesville, Georgia at 2540 Airport Rd..
4. Pursuant to the investigation, on June 16, 2022, Assistant Special Agent Katie O'Neil with VA-OIG submitted an application and affidavit to U.S. Magistrate Judge Christopher Ray and obtained a search warrant no. 4:22-MJ-53-CLR for the premises located at 2540 Airport Rd. and 2658 Airport Rd. in Hinesville, Georgia.

5. Said search warrant also authorized seizure and search of computers, hard drives, and electronic storage devices and their contents.

6. The warrant for the search of the premises at 2540 and 2658 Airport Rd., Hinesville and seizure of records attributed to the HOPCC and HOPBS is defective in the following particulars:

   1) The warrant lacks sufficient probable cause for the search of the premises, computers, and records.

   2) The warrant is unreasonably overbroad and amounts to an illegal general warrant.

   3) The warrant fails to describe a nexus of illegal activity to the premises, devices, and records sought to be searched.

   4) The warrant for the premises was stale.

7. On July 5, 2022, Assistant United States Attorney Jennifer Kirkland sent a subpoena from this Court for records from First Citizens Bank and Trust for an account ending in 2757 for which Mr. Nostrant was a signatory that was used to conduct the business of Governors Management, LLC, a private corporation.

8. On March 5, 2025, Assistant United States Attorney Patricia G. Rhodes sent a second subpoena from this Court for records from First Citizens Bank and Trust for an account ending in 2757 for which Mr. Nostrant was a signatory that was used to conduct the business of Governors Management, LLC, a private corporation.

9. The subpoenas for the First Citizens Bank and Trust records should be suppressed for the following reasons:

    1) They are fruits of an illegal search.

    2) Mr. Norstrand has a privacy interest in the records which are protected by the Fourth Amendment against unlawful search and seizure.

10. On July 11, 2022, Assistant United States Attorney Jennifer Kirkland sent a subpoena from this Court for records from First Horizon Bank for an account ending in 4595 for which Mr. Nostrant was a signatory that was used to conduct the business of HOPCC.

11. On December 3, 2024, Assistant United States Attorney Patricia G. Rhodes sent a second subpoena from this Court for records from First Horizon Bank for an account ending in 4595 for which Mr. Nostrant was a signatory that was used to conduct the business of HOPCC.

12. The subpoenas for the First Horizon Bank records should be suppressed for the following reasons:

    1) They are fruits of an illegal search.

    2) Mr. Nostrant has a privacy interest in the records which are protected by the Fourth Amendment against unlawful search and seizure.

13. In August, 2022, the exact date currently unknown to the defense, Assistant United States Attorney Jennifer Kirkland sent a subpoena from this Court for records from Regions Bank for an account ending in 4692 for which Mr. Nostrant was a signatory that was used to conduct the business of HOPCC.

14. The subpoena for the Regions Bank records should be suppressed for the following reasons:

    1) They are fruits of an illegal search.

    2) Mr. Nostrant has a privacy interest in the records which are protected by the Fourth Amendment against unlawful search and seizure.

15. On or about late July or early August, 2022, the exact date currently unknown to the defense, Assistant United States Attorney Jennifer Kirkland sent a subpoena from this Court for records from Suntrust bank (Now doing business as Truist) for an account ending in 0040 for which Mr. Nostrant was a signatory that was used to conduct the business of HOPBS.

16. The subpoena for the Suntrust/Truist records should be suppressed for the following reasons:

    1) They are fruits of an illegal search.

2) Mr. Nostrant has a privacy interest in the records which are protected by the Fourth Amendment against unlawful search and seizure.

17. On April 2, 2024, Assistant United States Attorney Patricia G. Rhodes sent a subpoena from this Court for records from Cadence Bank for an account ending in 4048 for which Mr. Nostrant was a signatory that was used to conduct the business of HOPCC.

18. The subpoena for the Cadence Bank records should be suppressed for the following reasons:

1) They are fruits of an illegal search.

2) Mr. Nostrant has a privacy interest in the records which are protected by the Fourth Amendment against unlawful search and seizure.

19. On March 5, 2025, Assistant United States Attorney Patricia G. Rhodes sent a subpoena from this Court for records from South Georgia Bank for an account ending in 0303 for which Mr. Nostrant was a signatory that was used to conduct the business of HOPCC.

20. The subpoena for the South Georgia Bank records should be suppressed for the following reasons:

1) They are fruits of an illegal search.

2) Mr. Nostrant has a privacy interest in the records which are protected by the Fourth Amendment against unlawful search and seizure.

21. On January 14, 2025, Assistant United States Attorney Patricia G. Rhodes sent a subpoena from this Court for records from Bank of America for an account ending in 4538 for which Mr. Nostrant was a signatory that was used to conduct the business of HOPCC.

22. On August 5, 2025, Assistant United States Attorney Patricia G. Rhodes sent a second subpoena from this Court for records from Bank of America for an account ending in 4538 for which Mr. Nostrant was a signatory that was used to conduct the business of HOPCC.

23. The subpoenas for the Bank of America records should be suppressed for the following reasons:

1) They are fruits of an illegal search.

2) Mr. Nostrant has a privacy interest in the records which are protected by the Fourth Amendment against unlawful search and seizure.

24. All of the subpoenas sent to the above banks included a cover letter instructing the bank not disclose the existence of the subpoena to anyone, particularly the customer.

25. For the reasons stated above, this Court should find the searches were unreasonable and unlawful, the subpoenas, and search warrant invalid on their face and suppress the improperly obtained evidence from trial.

26. Further, because the warrant and subpoenas were not supported by probable cause, failed to describe with particularity the items to be seized, were unreasonably overbroad, failed to describe a nexus of illegal activity to the premises to be searched, lacked legitimate legal basis for the requests on their faces, and were stale, the warrant and subpoenas were defective. All evidence seized, and any evidence obtained as a result, should be suppressed.

## II. Grounds For Suppression of Evidence

### A. The Search Warrant

27. Under the Fourth Amendment "no Warrants shall issue, but upon probable cause…" The warrant and affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause…" ***Illinois v. Gates,*** 462 U.S. 213, 239 (1983). Probable cause exists "'when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location.'" ***United States v. Williams***, 162 Fed.Appx. 884 (11th Cir. 2006) quoting ***United States v. Brundidge,*** 170 F.3d 1350, 1352

(11th Cir. 1999). The affidavits submitted by Agent O'Neil were not supported by probable cause. Mr. Nostrant was mentioned twice in the entire affidavit. The anonymous individuals described in the affidavit give accounts of alleged actions by the Nostrant's co-defendants that did not occur at the premises to be searched in the warrant. Nothing in the affidavit suggests any bank fraud or wire fraud was taking place on the premises. Nor is there any specific evidence described in the affidavit that any of the suspect forms submitted to GNPEC were sent from the premises or any devices within. The facts described within the affidavit and warrant did not provide the magistrate with a substantial basis to determine probable cause existed to obtain a search warrant to search the premises and seize and search computers and their contents within and the fruits of the search must be suppressed.

28. The warrant for the HOPCC and HOPBS premises were also overly-broad and non-particularized as it sought the search for and seizure of items from the whole of the premises at the addresses listed, while all of the information in the affidavit pertained strictly to the portion of the premises being used for the Bible Seminary. In addition, the warrant authorizes the seizure of "any digital device" and "any computer or storage medium that contains or in which is stored records of

information" without any further clarification of what kind of devices were used to further the alleged scheme. The Fourth Amendment to the United States Constitution and requires that a search warrant particularly describe the article or articles to be seized. A description in a search warrant is sufficient and particular when "it enables the searcher to reasonably ascertain and identify the things authorized to be seized" and prevents "general, exploratory rummaging in a person's belongings." ***United States v. Wuagneux***, 683 F.2d 1343, 1348-1349 (11th Cir. 1982). A search warrant is overbroad and unconstitutional when it fails to "sufficiently particularize" the place to be searched or "the things to be seized." ***United States v. Travers***, 233 F.3d 1327, 1329 (11th Cir.1985). Mr. Nostrant has a reasonable expectation of privacy in the computer he used for bookkeeping at HOPCC. ***United States v. Weiss,*** 2026 U.S. Dist. LEXIS 146101 (ED Mich. 2026). A warrant like this one that has no date or subject-matter limitation for either the documents or the electronic data it seeks to seize is overbroad. ***Weiss***, 2026 U.S. Dist at *31. In addition, the affidavit exclusively concerns itself with alleged fraud committed against the VA, which involves funds sent to the Bible Seminary. Mr. Norstrant resided in the building at 2540 Airport Rd.. The Bible Seminary was conducted in the building at 2658

Airport Rd.. In this case, the warrant was so overbroad and non-particularized that law enforcement conducted a general exploratory rummage through the entirety of Movant's premises and any electronic devices found within. Therefore, all evidence, and any derivative evidence, should be suppressed from evidence at trial.

29. The warrant itself lists no offenses. Attachment B ¶1 limits seizure to evidence of "the Specified Federal Offenses committed by owners or employees of HOPBS–[site]" but doesn't specify the offenses. Both of those defined terms exist only in the affidavit (¶6). The warrant says the affidavit "establish[es] probable cause," but it contains no express words of incorporation. A court may construe a warrant with reference to the affidavit only if the warrant "uses appropriate words of incorporation" and the affidavit "accompanies the warrant." ***Groh v. Ramirez***, 540 U.S. 551, 557–58 (2004). Where the warrant references an attachment that lacks particularity, the executing officers cannot presume it to be valid. ***United States v. Leon***, 468 U.S. 897, 923 (1984).

30. For a search warrant to be reasonable, there must be a nexus between the things that law enforcement are searching for and the place they want to search to find them. ***Zurcher v. Stanford Daily***, 436 U.S. 547, 556 (1978). The warrant affidavit must contain sufficient information that

the evidence to be seized will be present at the location and an agent's generic assumption is not enough. ***United States v. Green***, 634 F.2d 222, 226 (5th Cir.1981). There is no nexus between the investigation of the wire fraud and the premises and computers specified in the warrant. The facts described in the affidavits do not provide the magistrate with a substantial basis that criminal activity was accomplished at the premises in question or any computers located within. The warrants fail to show a substantial link between the criminal activity alleged and premises searched. Therefore, all evidence, and any derivative evidence, should be suppressed from evidence at trial.

31. Agent O'Neil obtained the search warrant for the premises at the HOPCC and HOPBS in June of 2022. The most recent information from the witnesses contained in the affidavit relative to the date of the warrant was obtained some time in 2020. In considering whether there was a fair probability that evidence will be found in a particular place, information may be considered stale based on its age. ***United States v. Espinoza***, 9 F.4th 633, 636 (8th Cir. 2021). Factors relevant to staleness include the lapse of time, the nature of the criminal activity, and the property to be searched. ***Espinoza***, 9 F. 4th at 635-636, citing ***United States v. Johnson***, 848 F.3d 872, 877 (8th Cir. 2017). There was no new information

showing that any of the principles repeated the conduct in the period subsequent to January 2022. There was no probability that new evidence would be found on the premises. There wasn't a fair probability that additional evidence would be found and the warrant was stale.

**B. The Subpoenas**

32. The nature and quantity of information revealed by bank records has grown and changed in a society that is increasingly becoming a cashless one. Bank records today like the ones requested by the Government reveal intricate details about one's life. Not only do they reveal spending habits and the identity of payees, they also reveal information about one's location at a particular place and time similar to GPS data, as well as details about your diet, your preferences for clothes, leisure and recreation activities, internet browsing habits, medical conditions, and political leanings. Bank records, including transactions made using the Zelle payment system, effortlessly compiled like Cell Site Location Information held by wireless phone carriers such as Verizon, give the Government the ability to travel back in time to retrace a person's financial history and movements. Financial transactions today can be done instantly at the click of a button on a phone or laptop and no longer rely on negotiated instruments like checks that are physically handled by

bank employees. Even the act of withdrawing physical cash from the bank is almost completely automated as ATM's have substantially replaced live bank tellers, creating new digital surveillance opportunities in the process. Just as cell phones contain "a digital record of nearly every aspect of [the owners'] lives- from the mundane to the intimate," a potentially more pervasive scrutiny of one's life is implicated in the seizure of cell phone and bank records than a search of a physical premises. See ***Riley v. California**,* 573 U.S. 373, 394-395 (2014). "And the government's unrestrained power to assemble data that reveal private aspects of identity is susceptible to abuse." ***U.S. v. Jones***, 565 U.S. 400, 416 (2012) (Sotomayor, J. concurring).

33. "More fundamentally, it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties." ***Jones***, 565 U.S. at 417 (Sotomayor, J. concurring), citing ***Smith v. Maryland***, 442 U.S. 735, at 742 (1979) and ***United States v. Miller*,** 425 U.S. 435, 443 (1976). The logic that the Court in ***Miller*** used to deny an expectation of privacy in bank records no longer holds up due to advances in computer technology, automated banking, and the evolution of online shopping and purchasing platforms. The same is true for ***Smith***, as cell phone

technology was in its' infancy and unknown to the general public when it was decided. The leaps in wireless technology made phone records increasingly complicated in terms of the amount of data they yield and the kinds of data they yield. Recently, the Supreme Court reaffirmed that individuals have reasonable expectations of privacy in their data held by third parties like emails, documents, photos, calendars, and location data. ***Chatrie v. United States***, 609 U.S. ____, 146 S. Ct. 2193, 2197 (2026).

34. The decisions of the Supreme Court in cases like ***Riley***, ***Carpenter***, and ***Chatrie*** which were critical of using subpoenas to avoid the warrant requirement, reflect the steady erosion of the third party doctrine as expounded in ***Smith*** and especially ***Miller***. ***Carpenter***, at 318-319. The Supreme Court has never held categorically that subpoenas are exempted from scrutiny under the Fourth Amendment. ***Carpenter*** at 318. The decision in ***Miller*** considers bank records such as checks "not confidential communications but negotiable instruments to be used in commercial transactions." ***Miller***, 425 U.S. at 442. The analysis the Court used in ***Miller*** doesn't apply anymore in an age when banking is done instantly and electronically without the need for intervention by bank employees. Today, the ordinary course of banking business doesn't

require revealing account details to third persons but is handled automatically by computers and other automatic/electronic means making time-stamped records of each transaction. And as the Court emphasized in ***Chatrie***, "[t]he point of carrying smartphones is to use what is on them -- as ***Carpenter*** said, to use the apps and 'services they provide.' ***Chatrie***, supra, at 2214, citing ***Carpenter***, supra, at 315. Due to the decline in the use of physical checks and deposit slips and the increasingly common use of banking apps on smart phones, there's now an implicitly reasonable expectation of privacy in one's information associated with bank records stored with a third party such as Bank of America, particularly regarding expenditures intended to be confidential.[1] (insert footnote to research). In addition to the increase in scope of the privacy intrusion implicated by the individual categories discussed in ***Smith*** and ***Miller***, the Court should also consider the depth and length of the intrusion here, as the Government obtained bank records spanning five years or more.

35. The Court in ***Carpenter*** followed a line of cases beginning with ***Katz v. United States***, 389 U.S. 347, 351, that say the Fourth Amendment

[1] Matt Wostbrock, ***Miller*** *In A Cashless Society: Financial Surveillance And The Fourth Amendment*, 2023 No. 2 Colum. Bus. L. Rev. 1015, 1035-1041 (2024).

protects both one's interest in property as well as certain expectations of privacy. ***Carpenter v. U.S.***, 138 S.Ct. 2206, 2217 (2018) The holding in ***Carpenter*** takes into consideration that society and phone technology changed so much since the third-party doctrine was applied to phone records in ***Smith*** that the third party doctrine was no longer applicable to the Cell Site Location Information held by telecommunications carriers. ***Carpenter***, 138 S.Ct. at 2217. "Given the unique nature of cell phone location records, the fact that the information is held by a third party does not by itself overcome the user's claim to Fourth Amendment protection." ***Id***. The Court in ***Chatrie*** continued and expanded that same analysis, saying that "[a] cell phone user is not to be viewed as sharing private information with third parties--which then can be freely passed on to the government, just by doing ordinary things cell-phone users do." ***Chatrie***, supra, at 2214-2215.

36. Similarly, given that financial transactions can be conducted on your cell phone using an App connected to your bank account, you carry your bank account and its' deep well of data with you everywhere. And as we move closer to being a completely cashless society, the scope of personal information obtained by banks from bank records and other means like location and other data communicated through banking Apps

will continue to grow. The rule that the Court adopts 'must take account of more sophisticated systems that are already in use or development.'" ***Carpenter***, 138 S. Ct. at 2218, citing ***Kyllo v. United States***, 533 U.S. 27, 36 (2001). The Fourth Amendment protects individuals against searches and seizures that are effectuated by private parties who act as agents of law enforcement. ***Skinner v. Ry. Labor Executives' Ass'n***, 489 U.S. 602, 614 (1989). Therefore, the third-party doctrine as applied in ***Smith*** should no longer apply to cellular service providers and ***Miller*** should no longer apply to personal data held by banks. In the wake of the decisions in ***Carpenter*** and ***Chatrie***, the Government should get a warrant supported by probable cause for cell phone subscriber records and pen registers as well as for bank records. Where the Government obtains electronic bank records without a warrant like in this case, it amounts to a warrantless search without any exigent circumstances, and any fruits of the search must be suppressed.

37. Nonetheless, if this Court hesitates to extend the reasoning in ***Katz*** and ***Carpenter*** to overrule ***Smith*** and ***Miller*** and find a reasonable privacy interest of Mr. Nostrant in HOPCC's bank and Zelle records, there is an alternative analysis. It began with Justice Sotomayor's concurrence in ***United States v. Jones***, 565 U.S. 400, 417 (2012) where she questioned

the third-party doctrine as being "ill-suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks." Justice Gorsuch struck a similar tone in his dissent in ***Carpenter*** when he wrote, citing ***Smith*** and ***Miller***, that "[b]y these steps, the Court came to conclude, the Constitution does nothing to limit investigators from searching records you've entrusted to your bank, accountant, and maybe even your doctor. What's left of the Fourth Amendment?" ***Carpenter***, 138 S.Ct. at 2261-2262 (Gorsuch, J. dissenting).

Instead, Justice Gorsuch advocated a Fourth Amendment doctrine based more on traditional property analysis where "Fourth Amendment protections for your papers and effects do not automatically disappear just because you share them with third parties." ***Id***. at 2268. Trusting a bank with your money and the data it generates would be considered a "bailment" where the bank is considered a "bailee" who "owes a legal duty to keep the items safe, according to the terms of the parties' contract if they have one, and according to the 'implication[s] from their conduct' if they don't." *Id*. at 2268-2269, citing 8 C.J.S., Bailments § 36, pp. 468-469 (2017). "This approach is quite different from ***Smith*** and ***Miller***'s (counter)-intuitive approach to reasonable expectations of

privacy; where those cases extinguish Fourth Amendment interests once records are given to a third party, property law may preserve them." ***Id*** at 2269.

Justice Gorsuch cites ***Ex parte Jackson***, 96 U.S. 727, 733, 24 L.Ed. 877(1878) as the basis for such an approach where the "Court held that sealed letters placed in the mail are 'as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles.'" ***Id***. Furthermore, "***Jackson*** suggests the existence of a constitutional floor below which Fourth Amendment rights may not descend." ***Id***. at 2270. "[T]his constitutional floor may, in some instances, bar efforts to circumvent the Fourth Amendment's protection through the use of subpoenas." ***Id***. at 2271. In Gorsuch's analysis, where information held by banks is considered personal property and/or effects, it's given full protection by the Fourth Amendment. In his concurrence in ***Chatrie***, Justice Gorsuch reiterated that the seizure of location data in that case was a search, because such data are property within the definitions of "papers and effects," the search and seizure of which is protected by the Fourth Amendment. ***Chatrie***, supra, at 2222. He also observed that the majority in ***Chatrie*** had moved toward his view of electronically stored

data like email, photos, and calendars held by third parties as personal property stored by a third party. ***Id***. Therefore, the bank records of HOPCC and Governor's Management, LLC were the organizations's personal property and effects as administered by Mr. Nostrant and held in bailment by the banks. Any seizure of them without a warrant was illegal.

38. The Government used subpoenas to obtain bank records from Cadence Bank, South Georgia Bank, Regions Bank, Suntrust, First Citizens Bank & Trust, First Horizon, and Bank of America for HOPCC and Governor's Management, LLC. The Court's majority in ***Carpenter*** held "that the Government must generally obtain a warrant supported by probable cause before acquiring such records" where the owner maintains a reasonable expectation of privacy. ***Carpenter***, supra. at 2221. Justice Kennedy in his dissent in ***Carpenter*** described a longstanding principle upholding the decisions in ***Smith*** and ***Miller*** that the government can use compulsory process to compel people to disclose documents and other evidence in their control. ***Carpenter***, supra, at 329. He noted that this principle includes the fact that subpoenas allow the recipient to present objections before complying which acts to mitigate the intrusion. ***Id***. at 329-330. However, the

subpoenas to all of these banks specifically prevented them from alerting Mr. Nostrant, HOPCC, and Governor's Management, LLC to the Government's request. A subpoena is still a "constructive" search subject to Fourth Amendment constraints. ***Id***. at 330, citing ***Oklahoma Press Publishing Co. v. Walling***, 327 U. S. 186, 195, 66 S. Ct. 494, 90 L. Ed. 614 (1946). There is no evidence that the subpoenas for HOPCC and Governor's Management, LLC records as administered by Mr. Nostrant was based on any probable cause or other affirmative showing. For any of the reasons explained above, all of these bank records are protected by the Fourth Amendment and this Court should require the Government to show probable cause and obtain a search warrant to obtain them.

WHEREFORE, Movant respectfully requests that this Court grant an evidentiary hearing and suppress the improperly obtained evidence against him in this case. Movant also requests the right to amend this motion and file any additional motions as may be necessary.

This 30 day of October, 2026.

*/S/ Bruce S. Harvey*____________________
LAW OFFICES OF BRUCE S. HARVEY
Attorney for Defendant
Bruce S. Harvey, GA Bar No. 335175
bruce@bharveylawfirm.com
Jamie Roberts, GA Bar No. 608590
jamie@bharveylawfirm.com

117 Luckie St. NW
Atlanta, GA 30303
404-659-4628